IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

ANDREW STEWART,
ASHLEY STEWART,
DINNER'S READY, INC.,
a West Virginia corporation, d/b/a
Bridge Cafe & Bistro,

                Plaintiffs,

v.                                           CIVIL ACTION NO.  3:20-0611

JAMES C. JUSTICE, II,
in his official capacity as Governor of West Virginia,
RICK SNAMAN, an individual,

                Defendants.

## MEMORANDUM OPINION AND ORDER

On November 16, 2020, Plaintiffs filed an "Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order." ECF No. 23. Defendant Putnam County Commission was subsequently dismissed from the case pursuant to voluntary dismissal by the parties. ECF No. 20. Defendants Snaman and Justice responded on November 19, 2020, ECF Nos. 27, 29, 30, and Plaintiffs filed their Reply, ECF No. 32, the next day. On Monday November 23, 2020, the Court held a hearing in which counsel for all parties appeared. The matter is now ripe for review. For the reasons stated at the hearing and below, the Court **DENIES** the Motion.

## I. BACKGROUND

Plaintiffs seek an injunction "prohibiting criminal charges and/or enforcement against them for violations of the West Virginia Governor's 'Mask Mandate.'" Pls.' Mot. 1. The so-called "Mask Mandate" is contained within Executive Order No. 77-20 ("EO 77-20") which, among other things, requires: (1) "all individuals age 9 and over . . . [to] wear an adequate face covering when

1

in confined, indoor spaces where other individuals may be present, regardless of one's perceived ability to social distance from other individuals[;]" and (2) businesses to "post adequate signage notifying patrons of the requirements of this Order, and [] enforce the same on their premises." EO 77-20, ECF Nos. 23-1, 29-2.

Plaintiffs also raise several arguments regarding the Governor's "Stay at Home Order," Executive Order 9-20 ("EO 9-20"), which has been amended by numerous other executive orders. *See* Exec. Orders 60-20, 58-20, 56-20, 25-20, 24-20, 22-20, 21-20. EO 9-20 required all West Virginia residents to "stay at home" unless performing an "essential activity," and all "non-essential" businesses and operations to temporarily cease. Plaintiffs asserted neither in the Motion nor in the hearing that they seek an injunction prohibiting enforcement of EO 9-20. But they do argue that EO 9-20 violates their substantive due process and equal protection rights. Consequently, the Court will broadly construe Plaintiffs' request for relief and address Plaintiffs' arguments below.

Finally, Plaintiffs' Motion also arises from a press conference held by the Governor announcing EO 77-20. There is nothing in the record containing a direct quote from the Governor, but the Plaintiffs characterize the Governor's statement as "mandating" all business owners "to call police on any individuals within their business premises who are not wearing masks," and that "if business owners do not call law enforcement, the business owners can then be arrested for obstruction." Pls.' Br. 14, ECF No. 24. Plaintiffs proffer a single news report in support of this characterization, which states:

> Justice also signaled law enforcement, citing conversations with legal counsel.
>
> If patrons don't follow the order, Justice told business owners to call the police. And if someone isn't following the mask mandate, they're obstructing justice,

Justice said. The governor also said an obstruction of justice charge would apply
to business owners/operators that are flaunting the rule.[1]

According to Plaintiffs, this demonstrates that the Governor threatened to enforce EO 77-20 and

that such enforcement would violate their constitutional rights.

## II. LEGAL STANDARD

Given that Defendants have responded to Plaintiffs' request for relief through memoranda

and at a hearing, the Motion can be treated as a preliminary injunction rather than a TRO. *See* Rule

65(a). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III. DISCUSSION

Plaintiffs' suit raises several claims under the federal constitution, including claims under

the First, Fourteenth, and Fourth Amendments. Those claims are properly before the Court under

42 U.S.C. § 1983, which permits federal courts to hear federal claims for injunctive relief brought

against state officials. To the extent that Plaintiffs raise claims under state law,[2] those claims are

barred under the Eleventh Amendment, which prohibits "a federal suit against state officials on

---

[1] Matt Harvey, *West Virginia Gov. Justice Issues Tough New Mandatory Face Mask Order; Pushes Back Winter Prep Sports to Jan. 11*, West Virginia's News (Nov. 13, 2020), https://www.wvnews.com/news/wvnews/west-virginia-gov-justice-issues-tough-new-mandatory-face-mask-order-pushes-back-winter-prep/article_3be82b5e-25c7-11eb-b719-1bf757ee8993.html?fbclid=IwAR0pl2vWUEAbgrAmAb_n-_upK7XhO4We25Yba7VRJz4J2o6ivQ34rNtGj5Eblue.

[2] Throughout their Complaint and briefing, Plaintiffs assert that Governor's orders exceed the scope of his emergency powers under West Virginia Code § 15-5-6(c)(6) and his executive powers under the West Virginia Constitution. Compl. ¶¶ 76-85; Pls.' Br. 11–14. Perhaps realizing that this claim is barred by the Eleventh Amendment, Plaintiffs argue in their Reply that they "are not seeking to prosecute a state law claim against the Governor, but rather violations of federal law." Pls.' Reply 6. They further assert that "[t]he Governor is violating federal law by virtue of the fact that he has no state constitutional authority to act on behalf of the West Virginia legislature." *Id*. However, Plaintiffs have not identified which federal law supports their *ultra vires* claim as pleaded. Even when asked at the hearing, Plaintiffs' counsel could not articulate how the scope of the Governor's powers under state law affects the federal constitutional claims beyond simply "providing context."

the basis of state law. . .when—as here—the relief sought and ordered has an impact directly on the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

1.  Likelihood of Success

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) provides the applicable standard in cases challenging public health orders. The plaintiffs in *Jacobson* challenged a board of health regulation requiring all adults to get a smallpox vaccination. *Id*. at 12–13. In reviewing the law, the Court counseled against overriding the legislature's power to decide the best way to protect public safety. *Id*. at 30. *Jacobson* teaches that "[o]ur Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, J., concurring) (citing *Jacobson,* 197 U.S. at 38) (internal quotations omitted). Accordingly, although courts generally have jurisdiction over constitutional challenges to public health measures, the standard of review is highly deferential. To invalidate an elected officials' action in response to a public health crisis, a plaintiff must show either (1) that it has "no real or substantial relation" to protecting public health, or (2) that it is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson,* 197 U.S. at 31.

Although *Jacobson* is more than a century old, recent case law shows that it is still good law. Chief Justice Roberts recently invoked the standard in a concurrence to the Court's denial of an application for injunctive relief against California Governor Gavin Newsom's executive order aimed at limiting the spread of COVID-19. *See S. Bay United Pentecostal Church*, 140 S. Ct. 1613 (citing *Jacobson* 197 U.S. at 38). In addition, several circuit courts have also applied the *Jacobson* framework to COVID-19 related restrictions. *See, e.g.*, *Robinson v. Attorney General*, 957 F.3d 1171, 1179–80 (11th Cir. 2020); *In re Rutledge*, 956 F.3d 1018, 1027 (8th Cir. 2020); *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 925–27 (6th Cir. 2020) (petition for certiorari filed); *Ill.*

*Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

Though the Fourth Circuit Court of Appeals has not directly addressed the standard of review for constitutional claims challenging health orders during the COVID-19 pandemic, several district courts within the circuit have followed the above decisions and applied *Jacobson*. For example, in the Northern District of West Virginia, Judge Bailey denied a request for a preliminary injunction challenging Governor Justice's executive orders, finding that "[w]ith regard to the first factor, likelihood of success on the merits, the starting point must be *Jacobson*. . . ." *AJE Enter. LLC v. Justice*, No. 1:20-CV-229, Doc. 28 at 3 (N.D. W. Va. Oct. 27, 2020). Judge Blake in the District Court of Maryland came to the same conclusion in another COVID-19 related case when denying a preliminary injunction and granting a motion to dismiss. *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 228 (D. Md. 2020) ("Since the challenged orders are public health measures to address a disease outbreak, *Jacobson* provides the proper scope of review."), *appeal dismissed sub nom.*, No. 20-1579, 2020 WL 6787532 (4th Cir. July 6, 2020); *Antietam Battlefield KOA v. Hogan*, No. CV CCB-20-1130, 2020 WL 6777590, at *2 (D. Md. Nov. 18, 2020). Several other judges in the Eastern District of Virginia have also reached this conclusion. *See, e.g.*, *Tigges v. Northam*, No. 3:20-CV-410, 2020 WL 4197610, at *7 (E.D. Va. July 21, 2020).

Given the apparent consensus that *Jacobson* applies to challenges to COVID-19 related restrictions, the Court will apply that standard here. Accordingly, in order to show that they are likely to succeed merits, Plaintiffs must show that the Governor's executive orders either (1) it has "no real or substantial relation" to protecting public health, or (2) that it is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *See Jacobson*, 197 U.S. at 31.

A. Real or Substantial Relation

The Governor's orders have a "real or substantial relation" to a public health crisis. On

March 17, 2020, West Virginia confirmed its first reported case of COVID-19. Aff. of Bill J. Crouch 1 at ¶14.[3] Since then, the novel virus has infected over 41,000 West Virginians and killed at least 667.[4] Nationwide, over 12 million cases have been reported and more than 246,000 Americans have died of the disease.[5] These numbers are likely to continue rising. The national 7-day average rate of new cases per day has increased since the inception of this suit from 37,579 cases to 170,217.[6] "This public health emergency is unprecedented in the past century. . . ." Crouch Aff. 1 at ¶ 8.

In developing West Virginia's response to the pandemic, the Governor consulted with public health professionals who have "reviewed countless scholarly articles, news reports, and studies from around the world since the pandemic began." Crouch Aff. 1 at ¶ 8. The Government has determined that the disease spreads through "droplets, aerosols, talking, yelling, screaming, coughing, sneezing, and just breathing, and it spreads more the longer persons spend in contact with each other." Aff. of Clay B. Marsh 1 at ¶ 6.[7]

 "The evidence for the efficacy of wearing masks in preventing the spread of COVID-19 is indisputable and is in accordance with CDC guidelines." Marsh Aff. 2 at ¶ 6. The Governor issued EO 77-20 (which superseded a prior face covering requirement, EO 50-20) based on "national and international standards in combating the disease, [state officials'] greater understanding of how to prevent its spread, updated public health guidance, and the knowledge that [the state] has gained since the beginning of March 2020." Crouch Aff. 2 ¶ 13.[8]

---

[3] Ex. B to Def.'s Resp., ECF No. 29-1.
[4] COVID-19 Daily Update (Nov. 23, 2020), https://dhhr.wv.gov/News/2020/Pages/COVID-19-Daily-Update-11-23-2020.aspx.
[5] Centers for Disease Control and Prevention, CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days.
[6] Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory (November 22, 2020), https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases.
[7] Ex. A to Def.'s Resp, ECF No. 29-1.
[8] Ex. D to Def.'s Resp, ECF No. 29-1.

Likewise, EO 9-20 and its amendments were issued "based on the best information and guidance available to [the state] from [] in-state experts, from [its] observation of other states, from national and international experts, and all the studies and resources [it] consulted." Crouch Aff. 1 at ¶ 21. The evidence shows that "physical distancing [is] critical in reducing spread, as is washing or sanitizing hands and surfaces." Marsh Aff. 2 at ¶ 7. It is also clear that "[i]ncreased person-to-person interaction during an accelerating phase of community COVID-19 spread is more likely to lead to outbreaks, and new infections across the state." *Id.* Based on this information, the Governor acted rationally in limiting social outings and gatherings. Altogether, this evidence indicates that the Governor's measures are informed, based on science, and substantially related to the COVID-19 pandemic.

Although Plaintiffs do not directly address the *Jacobson* standard in their briefing, they do dispute Defendants' characterization of the severity of the COVID-19 outbreak and argue that there is no rational basis for the face covering requirement. They argue that their county, Putnam County, has "only nominally been affected by the virus." Pls.' Br. 11. However, Putnam County "has an infection rate of 58.96 cases per 100,000 people—one of the highest in the state." Marsh Aff. 2 at ¶ 10. This rate is also greater than the national average.[9]

Plaintiffs further assert that there is no rational basis for the mandate because "**[s]ince the issuance of the mask mandate, Putnam County, West Virginia has recorded 23 more deaths**." *Id.* at 10 (emphasis in original). It is unclear whether Plaintiffs are arguing (a) that these deaths indicate that the executive order is ineffective because 23 deaths is too many, (b) that the deaths indicate that the executive order is unnecessary because 23 deaths is too few, or some other inference that is not apparent to the Court. In any case, Plaintiffs' argument is a textbook example

---

[9] CDC COVID Data Tracker (November 23, 2020), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (the national average rate is 52 cases per week per 100,000 persons).

of the logical fallacy that correlation equals causation.[10] The death rate is inapposite because it does not negate the West Virginia Department of Health and Human Resources' determination that face coverings and other social distancing restrictions are effective at slowing the spread of the virus. *See* Marsh Aff. 2 at ¶ 6. These mitigation measures serve to *prevent* infection, and Plaintiffs ignore the likelihood that the measures succeeded in reducing the number of deaths and serious disability in the state. *Id*.

Plaintiffs also represent that the "only major scientific study" conducted on the subject concluded that face coverings are ineffective at slowing the spread of the virus. Pls.' Reply 13 at n.6. Even if the Court assumes the study's credibility, the existence of evidence that contradicts the Government's policy does not lead to the conclusion that the Governor's orders have no rational basis. It is not the Court's role to "usurp the functions of another branch of government" in deciding how best to protect public health as long as the measures are not arbitrary or unreasonable. *Jacobson*, 197 U.S. at 28. And when elected officials "act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *S. Bay United Pentecostal Church*, 140 S. Ct. 1613 (citing *Marshall v. United States*, 414 U.S. 417, 427 (1974)) (internal quotes omitted). It is clear that the orders are neither arbitrary nor unreasonable. Therefore, the Court finds that there is a rational basis for the Governor's orders and that they bear a real and substantial relation to this public health crisis.

B. Constitutional Rights

Plaintiffs argue that the Governor's orders violate the First Amendment, Due Process

---

[10] Plaintiffs also compare the COVID-19 rate to the rate of male suicide in Putnam County, West Virginia, which they represent as 25 deaths per 100,000 residents per year. Pls.' Br. 10. It is unclear how this comparison supports Plaintiffs' position, especially because the two statistics are not comparable. With 28 deaths out of a population of 56,450, the COVID-19 death rate is nearly double the male suicide rate (.049% versus .025%). West Virginia Department of Health and Human Resources, *County Alert System, Putnam*, https://dhhr.wv.gov/COVID-19/Pages/default.aspx (last accessed November 20, 2020). Even so, the comparison is inapposite to the Court's analysis.

Clause, Equal Protection Clause, the Fourth Amendment, and the West Virginia Constitution. Pls.'
Mot. 5-14. As set forth below, none of these claims demonstrate that the orders are, "beyond all
question, a plain, palpable invasion of rights secured by the fundamental law." *See Jacobson*, 197
U.S. at 31.

        (i)     First Amendment

Although the Court can find no Supreme Court or Fourth Circuit case applying *Jacobson*
to First Amendment claims, several other circuit courts have indicated that *Jacobson* is instructive
in this context. *See, e.g.*, *Pritzker*, 973 F.3d 760; *High Plains Harvest Church v. Polis*, No. 20-
1280, 2020 WL 6749073 (10th Cir. Nov. 12, 2020); *In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020)
("*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to combat a public
health emergency."). Therefore, the Court will include Plaintiffs' First Amendment claim within
its broader *Jacobson* analysis.

Plaintiffs argue that the Mask Mandate violates the First Amendment because "the act and
the choice of wearing a mask over one's face versus not wearing a mask, like it or not, has become
political speech." Pls.' Br. 6. They argue that the mask mandate constitutes a content restriction
that does not meet strict scrutiny. *Id*. This Court disagrees.

"In deciding whether particular conduct possesses sufficient communicative elements to
bring the First Amendment into play, [the Supreme Court has] asked whether '[a]n intent to convey
a particularized message was present, and [whether] the likelihood was great that the message
would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989)
(citation omitted). The expression must be "overwhelmingly apparent" and not simply a "kernel
of expression." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006);
*City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (citing *Johnson,* 491 U.S. at 406). Applying this

rule, the Supreme Court has held that allowing military recruiters on campus is not expressive conduct protected by the First Amendment, *see Rumsfeld*, 547 U.S. at 66, and the Fourth Circuit has found that recreational dancing is not either, *Willis v. Town Of Marshall, N.C.*, 426 F.3d 251, 257 (4th Cir. 2005). As to the military recruiting, the Court found that schools' refusal to allow recruiting on campus was expressive only because the schools' conduct was accompanied by speech. *Rumsfeld*, 547 U.S. at 66. But "[t]he fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection" as symbolic speech. *Id.*

Here, although Plaintiffs feel that refusing to wear a face covering expresses "nonconformity with unconstitutional and un-American laws," Compl. ¶ 46, that meaning is not "overwhelmingly apparent." *See Rumsfeld*, 547 U.S. at 66 (quoting *Johnson*, 491 U.S. at 406). Instead, failing to wear a face covering would likely be viewed as inadvertent or unintentional, and not as an expression of disagreement with the Governor. Regularly wearing face coverings is new to many Americans, and individuals are still not required to wear them at home, outdoors, and in many other settings. Likewise, posting a sign advising patrons of EO 77-20 does not necessarily convey agreement with the order's contents.

Even if the Court accepted Plaintiffs' argument that EO 77-20 restricts First-Amendment protected conduct, the order can only be construed as a content-neutral time, place, and manner restriction that is subject to intermediate scrutiny. *See Ross v. Early*, 746 F.3d 546, 552 (4th Cir. 2014). A content-neutral restriction must be "narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citations omitted).

The Court finds that the order meets that standard. As discussed above, EO 77-20 serves

to slow the spread of COVID-19 by requiring individuals to wear masks indoors. Slowing the spread of a novel virus that has already killed over 250,000 Americans is a compelling, and at least significant, government interest. *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 237 (D. Md. 2020); *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353 (4th Cir. 2011) ("[T]he state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest."); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) ("[T]he prison's interest in preventing the spread of tuberculosis, a highly contagious and deadly disease, is compelling."). Moreover, as the Governor rightly states, the order does not prevent Plaintiffs from expressing their disagreement with the face covering requirement in other ways.

The Court also finds that EO 77-20 is narrowly tailored. Although the state-wide order is undeniably broad, it is no less narrowly tailored to its purpose. The order is geographically broad and indefinite, but so too is the virus. The order applies to all individuals regardless of their apparent health, but the evidence shows that asymptomatic individuals are nonetheless contagious. Aff. of Clay B. Marsh Aff. 2 at ¶15. Moreover, the order is narrowly tailored through its various exceptions. Indeed, the order even provides an exception that allows businesses—like Bridge Café & Bistro—to continue operating: "face covering shall not be required . . . when one is actively engaged in the consumption of food and/or beverage." EO 77-20 ¶1.

Plaintiffs' arguments that EO 77-20 does not meet the above standard are wholly without merit. Plaintiffs argue that "[t]here has been no legislation enacted by the West Virginia legislature, enabling an analysis of the government activity as to whether it is narrowly tailored. Nor can there be a proper analysis as to what the specific governmental interest is pertaining to the mask mandate and its enforcement, given its issuance via executive order." Pls.' Br. 6. Plaintiffs do not provide a citation supporting this proposition, likely because it is not rooted in law. The Government is not

required to enact legislation to "enable" a First Amendment analysis or assert a legitimate governmental interest in court. *See, e.g.*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) (analyzing an executive order as a restriction on a nonpublic forum).

Finally, Plaintiffs argue that EO 77-20 is unconstitutionally vague because it "fails to provide fair notice." Pls' Br. 6. Plaintiffs make no attempt to identify which section of the executive order is vague. The Court cannot discern any section that is unduly vague such that a person of "ordinary intelligence" would not "know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). It clearly states who must wear a face covering (individuals over the age of 9, with exceptions) and under what circumstances they must wear a face covering (when indoors with other individuals unless isolated, at home, or actively eating or drinking). Therefore, Plaintiffs have not demonstrated "a plain, palpable invasion" of their First Amendment rights.

(ii)    Procedural Due Process

Next, Plaintiffs argue that they have a "right to solicit and pursue costumers and operate their business without intentional and unjustifiable interference by the Government. . . ." Pls.' Br. 8. Plaintiffs argue that the Defendants' actions violated the Procedural Due Process Clause because they "were taken without notice, and without an opportunity for a hearing or other legal process. . . ." *Id*. Again, Plaintiffs' arguments are conclusory and lack merit.

To succeed on a due process claim, whether procedural or substantive, a plaintiff must demonstrate that he or she possessed "a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Plaintiffs assert that they have been deprived of First Amendment and property rights. Pls.' Br. 8. First, Plaintiffs have not been deprived of their First Amendment rights. Second, Plaintiffs' property interest claim fails because an assertion of a "general right to do business" has not been recognized as a

constitutionally protected right by the Supreme Court or the Fourth Circuit. *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *see also In re Premier Auto. Serv., Inc.*, 492 F.3d 274, 283 (4th Cir. 2007) ("The recognition of such a broad 'right to do business' would be akin to that recognized in *Lochner v. New York*, 198 U.S. 45 (1905), and its progeny, which the Supreme Court has long since refused to recognize."). Because Plaintiffs fail to identify a cognizable property interest of which they have been deprived, the Court finds that is claim fails under the *Jacobson*.

(iii)    Substantive Due Process

Plaintiffs' substantive due process claims likewise fail. Plaintiffs argue that the Governor's "Stay at Home Order" and "Mask Mandate" violate the substantive due process clause because the orders "violate the fundamental right to intrastate travel and their freedom of movement." Pls.' Br. 8. Plaintiffs further argue that the Orders are overbroad and do not pass the rational basis test. *Id*.

The "constitutional right to travel from one State to another is firmly embedded in [Supreme Court] jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (internal quotes omitted). As recognized by the Supreme Court, the right to travel "embraces at least three different components." *Id*. at 500. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. *Id*.

However, neither the Supreme Court nor the Fourth Circuit have expressly recognized the right to *intrastate* travel, which Plaintiffs invoke. *Willis*, 426 F.3d at 265 (declining to decide whether the right to intrastate travel is a fundamental right protected by the substantive component of the Due Process Clause) (citing *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 255–56 (1974)); *Schneider v. Metro. Wash. Airports Auth.*, No. 1:18-CV-402, 2019 WL 1931752, at *4

13

(E.D. Va. Mar. 27, 2019) (citing *Willis*, 426 F.3d 251) ("The Fourth Circuit has not reached the issue of whether a constitutional right to intrastate travel exists."). Moreover, even if the Plaintiffs could establish that intrastate travel constitutes a fundamental right, EO 9-20's restriction of that right is reasonable under *Jacobson*. As explained above, EO 9-20 is supported by the rational basis that temporarily restricting social interactions and gatherings will reduce the community COVID-19 infection rate. Accordingly, the Court finds that the Plaintiffs are not likely to succeed on this claim.

(iv) Equal Protection

Plaintiffs' equal protection argument is also without merit. Where a plaintiff in an equal protection claim does not allege that distinctions were made on the basis of a suspect classification such as race, nationality, gender or religion, the claim arises under the "class of one" theory. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail on such a claim, the plaintiff must demonstrate: 1) that the defendant treated him differently than others similarly situated, 2) the defendant did so intentionally, and 3) there was no rational basis for the difference in treatment. *See id.*

Plaintiffs argue that they were denied equal protection of the law on two grounds. First, Plaintiffs argue that the Governor violated the equal protection clause because the "Stay at Home Order and Mask Mandate failed to make distinctions between regions or counties within the State of West Virginia." Pls.' Br. 10. However, they have failed to demonstrate how the state-wide orders treated them differently than others similarly situated. In fact, Plaintiffs' contention is that the Governor *did not* make distinctions between counties but should have. Pls.' Br. 10. This is not a viable equal protection claim.

Plaintiffs' second argument is that the Governor's distinction between "essential" and "non-essential" businesses was arbitrary and had no rational basis. EO 9-20 provides that

14

restaurants are "essential" but only allows "consumption off-premises, through such means as take-away, delivery, or drive-through/drive in." EO 9-20 at ¶ 3(c). The evidence shows that COVID-19 spreads through "just breathing," and "spreads more the longer persons spend in contact with each other." Marsh Aff. 2 at ¶ 6. Therefore, it is rational to conclude that restricting restaurants to off-premises dining decreases the potential for gathering and the spread of the virus.

The only support for Plaintiffs' argument is in *County of Butler v. Wolf*, No. 2:20-CV-677, 2020 WL 5510690, at *30 (W.D. Pa. Sept. 14, 2020), which has been stayed by the Third Circuit Court of Appeals and is an outlier in COVID-related caselaw. A majority of cases have upheld state distinctions between "essential" and "non-essential" businesses, finding that they have a rational basis in protecting the public health from COVID-19.[11] This Court joins the majority and finds that EO 9-20 is not arbitrary for the reasons stated above. Consequently, Plaintiffs fail to demonstrate that they suffered a "plain, palpable invasion of fundamental rights" under this claim.

(v)   Fourth Amendment

Plaintiffs' final constitutional claim is that the Governor called for an impermissible search and seizure in violation of the Fourth Amendment at a press conference regarding EO 77-20. From what the Court can discern, Plaintiffs advance two arguments. First, Plaintiffs argue that it would be unconstitutional for the Governor to enforce EO 77-20 because it is an invalid state law. However, as discussed above, this argument presents a state law claim rather than a Fourth

---

[11] *See, e.g.*, *Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 540 (E.D.N.C. 2020) (rejecting the plaintiff's equal protection argument that the governor's distinctions between "essential" and "non-essential" operations was arbitrary); *In re Abbott*, 954 F.3d at 778 (upholding executive order that required health care professionals to postpone "non-essential" surgeries); *Altman v. Cty. of Santa Clara*, WL 2850291, at *2 (N.D. Cal. June 2, 2020) (upholding orders that "exempted 21 categories of 'essential businesses,' such as grocery stores, health care operations, and banks," while "Firearm and ammunition retailers and shooting ranges were not exempted"); *Best Supplement Guide, LLC v. Newsom*, WL 2615022, at *6 (E.D. Cal. May 22, 2020) (upholding executive order that required gyms to remain closed but allowed other businesses to reopen); *Bayley's Campground Inc. v. Mills*, WL 2791797, at *3 (D. Me. May 29, 2020) (upholding executive order despite plaintiffs' claim that it "discriminates-arbitrarily [ ]-in favor of business in rural counties").

Amendment claim. The Court is not aware of any case law that supports the premise that the state necessarily violates the Fourth Amendment by enforcing a law that violates the state constitution, nor have the Plaintiffs identified any such precedent. Thus, this claim is barred by the Eleventh Amendment.

Plaintiffs also argue that the Governor violated the Fourth Amendment when he "mandated" that business owners notify police when a patron does not comply with the order. However, the article Plaintiffs cite does not support this claim. It simply states, "If patrons don't follow the order, Justice told business owners to call the police."[12] Telling business owners to notify police is significantly different from requiring business owners to report violations under threat of criminal penalty. And while the article does state that businesses "flaunting" the order may be subject to criminal charges, that statement does not implicate the Fourth Amendment.

Even if the article did support Plaintiffs' claims, it would be insufficient to support a preliminary injunction. Plaintiffs bear the burden of establishing that the Government has taken an "action under color of state law" under 42 U.S.C. § 1983 that justifies immediate relief from the Court. A single news article paraphrasing the Governor's statement does not meet this burden. This is especially true given that the article conflicts with EO 77-20, which does not require business owners to report noncompliance under threat of criminal sanctions, and the Governor's actions, which do not indicate that there has been widespread enforcement. *See High Plains Harvest Church*, 2020 WL 6749073, at *2 ("Plaintiffs' contention rests on public comments by Governor Polis and a guidance document issued by CDPHE regarding the Protests. But the Governor's statements did not nullify the otherwise neutral and generally applicable Orders."); *see also Pritzker*, 973 F.3d at 770 (holding that a governor's "press release expressing sympathy for

---

[12] Harvey, *supra* note 1.

the protests . . . untethered to any legislative or executive rule-making process, cannot change the law"). Therefore, the Court cannot conclude that the Governor's statements are, "beyond all question," a Fourth Amendment violation.

2.   Irreparable Harm

To succeed Plaintiffs must show that they "will sustain irreparable harm without a preliminary injunction" that is "neither remote nor speculative, but actual and imminent." *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (internal citations omitted). Deprivation of a constitutional right, even for a short period of time, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Fourth Circuit has held that "in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is "inseparably linked" to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). The Court finds that this principle extends to all of the Plaintiffs' constitutional claims. Therefore, because Plaintiffs failed to show that they are likely to succeed on the merits, they have not demonstrated that they are likely to face irreparable harm without a preliminary injunction.

3.   Potential Harm to Defendants and the Public Interest

When the government is the party opposing the motion for preliminary injunction, the analyses regarding potential harm to the opposing party and the public interest merge. *See Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020). As detailed above, the Plaintiffs' concerns in conducting their business do not outweigh the severe harm West Virginians could suffer if the Court overrode the Governor's orders. Government authorities must have the ability to maintain public health and safety in times of great crises such as these. *See Jacobson*, 197 U.S. at 29; *In re Rutledge*, 956 F.3d at 1028–32; *In re Abbott*, 954 F.3d at 783–85.

17

## IV. CONCLUSION

After weighing the four factors, the Court finds Plaintiffs have not met their burden for a preliminary injunction. The Motion is **DENIED**.

The Clerk is DIRECTED to send a copy of this order to all counsel of record.

ENTERED:    November 24, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE