IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**ANDREW STEWART;**
**ASHLEY STEWART;**
**DINNER'S READY, INC.,**
a West Virginia corporation, d/b/a
**BRIDGE CAFE & BISTRO,**

                    Plaintiffs.

v.                                    Civil Action No. 3:20-cv-00611

**JAMES C. JUSTICE, II, in his official**
**capacity as Governor of West Virginia;**
**RICK SNAMAN, an individual,**

                    Defendants.

### DEFENDANT GOVERNOR JUSTICE'S
### REPLY IN SUPPORT OF MOTION TO DISMISS

As Plaintiffs continue their attack on the precautions set in place by the Governor to protect the health and safety of the community, West Virginia set its single-day record of forty-two COVID-19 deaths,[1] and thirty-six West Virginia counties are currently listed as red on the state's color-coded COVID-19 county alert system map, meaning that the percent positive rate is over 8%.[2] More importantly, Plaintiffs fail to respond with how their Complaint states a claim under the higher standard outlined in *Jacobson*[3] and fail to point to any part of their Complaint that sufficiently alleges that the Governor's Executive Orders are not substantially related to protecting the public's health or violate a fundamental right beyond question. In fact, Plaintiffs fail to even

---

[1] *West Virginia's 42 COVID Deaths is New Single Day Record*, Associated Press (Dec. 22, 2020, 2:59 PM), https://wvva.com/2020/12/22/west-virginias-42-covid-deaths-is-new-single-day-record/.
[2] W. Va. Dept. of Health & Human Res., *Coronavirus Disease 2019 County Alert System*, https://dhhr.wv.gov/covid-19/Pages/default.aspx (last visited Dec. 23, 2020).
[3] *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

respond whatsoever to the Governor's arguments that the Plaintiffs' Equal Protection and Separation of Powers allegations fail to state a claim upon which relief can be granted.

### I. *Jacobson* Remains Good Law

Although the Plaintiffs attempt to discredit the authority of *Jacobson* by stating that its holding is "long obscure" and this Court's reliance on the Supreme Court precedent is "misplaced," "the vast majority of courts have looked to *Jacobson* in their analysis of various pandemic responses." *AJE Enter. LLC v. Justice*, No. 1:20-cv-00229, 2020 WL 6940381, at *2 (N.D. W. Va. Oct. 27, 2020); *see also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2020) ("The district court appropriately looked to *Jacobson* for guidance, and so do we."); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 Fed. Appx. 125 (6th Cir. 2020) (holding that the holding in *Jacobson* is a "century-old historical principle that has been reaffirmed just this year by a chorus of judicial voices"); *In re Rutledge*, 956 F.3d 1018, 1031-32 (8th Cir. 2020); *In re Abbott*, 956 F.3d 696, 704-05 (5th Cir. 2020). Although the Fourth Circuit has not yet ruled on the issue, this Court and several others within the circuit have held that the *Jacobson* framework applies during public health emergencies. *See, e.g.*, *AJE Enter. LLC*, 2020 WL 6940381, at *2-4; *Berean Baptist Church v. Cooper*, 460 F.Supp.3d 651, 659 (E.D.N.C. 2020). Since this Court recently explained that *Jacobson* "provides the applicable standard in cases challenging public health orders," ECF No. 36 at 4, it certainly is not a "relic of a jurisprudence . . . long since abandoned." Pls.' Resp. 5.

The main authority the Plaintiffs use to support their proposition that *Jacobson* is no longer good law is Justice Gorsuch's nonbinding concurrence in *Roman Catholic Diocese v. Cuomo*, 141 S.Ct. 63 (2020).[4] Justice Gorsuch emphasized that without *Jacobson*, which essentially applies

---

[4] The Supreme Court remanded a similar case to the Ninth Circuit with instructions to remand to the district court for further consideration in light of *Roman Catholic Diocese*. The district court again denied the

rational basis review, the court would review a First Amendment claim for strict scrutiny where religious institutions were under stricter restrictions than other secular businesses. However, even without *Jacobson*, the Plaintiffs' claims must still be dismissed because "this Court would be compelled to continue to apply the rational basis standard." *AJE Enter. LLC*, 2020 WL 6940381, at *5. Unlike in *Roman Catholic Diocese*, the Plaintiffs here do not assert any factual allegations under any of their claims that would warrant heightened constitutional review. *Id.* Bars and restaurants are not churches, and bartenders are not ministers, for First Amendment purposes. For claims getting a rational basis review, it is incumbent upon the Plaintiffs to "negate every conceivable basis which might support [the executive orders]." *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012). "Under this test, the Governor's action 'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *AJE Enter. LLC*, 2020 WL 6940381, at *2 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). Here, of course, the Governor's actions are not only rational, but supported by the empirical data and evidence summarized in the affidavits of Dr. Marsh and Secretary Crouch. Plaintiffs have not alleged—let alone plausibly—that they could meet this high bar.

## II.     Plaintiffs Fail to State a Viable First Amendment Claim

Plaintiffs fail to state a claim that the Governor's response to the pandemic offends First Amendment principles, and they fail to cite any authority to the contrary. The Plaintiffs rely on *Tinker v. Des Moines Indep. Cmty. School Dist.*, in which the Court held that a school regulation

---

motion for a preliminary injunction in response to California's COVID-19 restrictions because the restrictions allowed religious congregations to gather in unlimited numbers for worship—so long as that worship occurred outside. *Harvest Rock Church, Inc. v. Newsom*, No. 20-6414, 2020 WL 7639584, at *4 (C.D. Cal. Dec. 21, 2020). The court found this treatment to be narrowly tailored to serve a compelling state interest—curbing the spread of the "world's deadliest infectious disease." *Id.* at *6. The district court emphasized that the "Constitution is not a suicide pact. The First Amendment may not be used to make it one." *Id.* at *11.

prohibiting the wearing of symbolic armbands violated the free speech clause of the First Amendment. 393 U.S. 503 (1969). However, in *Tinker*, the school directly prohibited a particular expression of opinion. Here, the Governor has not prohibited any expression of opinion by the Plaintiffs. The Plaintiffs are still free to express their viewpoint of the Governor's Executive Orders—nothing in the Executive Orders impinge in any way on their speech. The Executive Orders limit, instead, non-expressive conduct that increases the likelihood of spread of COVID-19.

Plaintiffs' Complaint only alleges that in response to their social media posts concerning the mask mandate, Defendant Snaman, acting under the direction of the Governor's Executive Orders, inspected Plaintiffs' business, threatened shutdown, and made adverse statements to the news media. Compl. ¶¶ 21-28. These actions do not violate Plaintiffs' freedom of speech. As stated previously, Plaintiffs are still free to express their opinions on social media. Compliance with a constitutional Executive Order is not a punishment.

Without citing any support, the Plaintiffs also argue that the physical act of refusing to wear a mandated mask triggers First Amendment protection because it is sufficiently expressive conduct. As this Court held previously, it is not. While the Plaintiffs contend that refusing to wear a mask is somehow a political and social opinion, that opinion is not "overwhelmingly apparent" such that it would be protected by the First Amendment. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). Not wearing a mask in public would not be viewed as expressing any type of message. *See Antietam Battlefield KOA v. Hogan*, 461 F.Supp.3d 214, 236 (D. Md. 2020) ("[I]n the context of COVID-19, wearing a face covering would be viewed as a means of preventing the spread of COVID-19, not as expressing any message."); *Minnesota Voters Alliance v. Walz*, No. 20-CV-1688 (PJS/ECW), 2020 WL 5869425, at *12 (D. Minn. Oct.

2, 2020) ("Absent explanation, the observer would not know whether the person is exempt from EO 20-81, or simply forgot to bring a face covering, or is trying to convey a political message. That fact takes the conduct outside of the First Amendment protection afforded by *O'Brien*."). Indeed, Plaintiffs and their patrons are free to wear masks with messages printed on them. Also problematic for the Plaintiffs, they do not plausibly allege that anyone—let alone any of the Plaintiffs—has been punished for refusing to wear a mask or that they have been muzzled in their efforts to voice their opinions about the inefficacy of masks. For these reasons, the mask mandate does not implicate the First Amendment.

### III. Plaintiffs Fail to State a Viable Procedural or Substantive Due Process Claim

Plaintiffs do not identify a "constitutionally cognizable life, liberty, or property interest" that would entitle them to succeed on a due process claim, whether procedural or substantive. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). The Governor's Executive Orders do not violate a property right that is within the protection of the Fourteenth Amendment of the Constitution.

The Plaintiffs assert that their right to operate a lawful business is a property right protected by the Fourteenth Amendment. The cases cited by the Plaintiffs to support this position are distinguishable. The Plaintiffs' citation to a Third Circuit case is an exemplar of their misapprehension of this fundamental point. The Plaintiffs say *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board* supports their argument that "a business is an established property right entitled to protection under the Fourteenth Amendment." 131 F.3d 353, 361 (3d Cir. 1997) (citing cases the Plaintiffs use for support, including *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) and *Small v. United States*, 333 F.2d 702, 704 (3d Cir. 1964)). Subsequently, in that very case, the Supreme Court clarified what constitutes a property right that

is entitled to protection under the Fourteenth Amendment. "The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment. But business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *see also In re Premier Auto. Serv. Inc.*, 492 F.3d 274, 283 (4th Cir. 2007) ("The recognition of such a broad 'right to do business' would be akin to that recognized in *Lochner v. New York*, 198 U.S. 45 (1905), and its progeny, which the Supreme Court has long since refused to recognize."). Supreme Court and Fourth Circuit precedent directly negates the Plaintiffs' assertion that the "right to pursue, i.e., *operate*, their restaurant, is indeed protected by the Fourteenth Amendment." Pls.' Response 15.

Further, Plaintiffs' argument that the Governor deprived them of business assets, including goodwill, fails. The Governor's Executive Orders do not entitle the state to take any assets of a business. Rather, the Executive Orders restrict *how* the Plaintiffs may conduct their businesses during a global pandemic. As discussed previously, the general right to do business is not a protected right under the Fourteenth Amendment. Plaintiffs contend in conclusory fashion that "sudden, unexpected mandated closure by a Governor without due process of law" affected their goodwill without explaining how. Pls.' Resp. 14. "Essentially, the goodwill of a business is its value as a going concern and is made up of many factors, such as location, patronage of customers, relations with suppliers, experience of employees, effectiveness of management, and many other factors." *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999). None of these factors were affected by the Executive Orders, which are generally applicable orders applying equally to thousands of businesses in West Virginia, and the orders did not directly target the Plaintiffs' individual business.

Moreover, "courts have held that in the current COVID-19 crisis, temporary closures of a business do not implicate procedur[al] due process rights." *Xponential Fitness v. Arizona*, No. CV-20-01310-PHX-DJH, 2020 WL 3971908 (D. Ariz. July 14, 2020) (citing *Talleywacker, Inc. v. Cooper*, 465 F.Supp.3d 523 (E.D.N.C. June 8, 2020)). For example, "summary administrative action may be justified in emergency situations." *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299-300 (1981). And here, it is easy to see why that is so. COVID-19, unknown in West Virginia at the beginning of this year, has swept across the globe with a ferocity never experienced in our lifetimes, infecting more than 78 million people and causing more than 1.7 million deaths. Governments around the world, including West Virginia's, have had to make swift and difficult decisions to control the spread of the virus, reduce infections, prevent deaths, and—since summer—try to reopen their societies and economies safely and gradually. "[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected." *AJE Enter. LLC*, 2020 WL 6940381, at *6 (quoting *Bayley's Campground Inc. v. Mills*, 463 F.Supp.3d 22, 36 (D. Maine 2020)). This is all before the Court as West Virginia is experiencing a severe increase in the number of new infections and deaths from the virus.

The Plaintiffs repeatedly assert the incorrect notion that the Governor does not have the statutory authority to implement the Executive Orders to protect the public's health and safety. That is not so, and the topic was covered at length at the hearing on Plaintiffs' motion for preliminary injunction. ECF No. 37, Prelim. Injunction Hr. Tr. 6–10 (Nov. 23, 2020) (Plaintiffs' counsel admitting that the Governor has authority to issue Executive Orders). In the Emergency Powers Act, the West Virginia legislature vested the Governor with broad authority during a state of emergency. *See* W. Va. Code. § 15-5-6. In his discretion, the Governor may "suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business" and

"exercise other functions, powers and duties that are necessary to promote and secure the safety and protection of the civilian population." *Id.* § 15-5-6(c)(7), (11). The Governor is doing what is right and lawful to protect the public's health and save lives. Nevertheless, this contention fails for a more fundamental reason. This Court "is precluded, as a Federal Court of limited jurisdiction, from hearing cases where the plaintiff is trying to [get] a state actor to comply with state law." ECF No. 37, Prelim. Injunction Hr. Tr. 6–10 (Nov. 23, 2020).

For all the foregoing reasons, Defendant Governor Justice respectfully asks the Court to dismiss this action with prejudice and grant such other relief as the Court deems appropriate, including costs and attorney fees.

    Respectfully submitted:

    **James C. Justice, II in his official capacity as Governor of West Virginia**

    By Counsel

    */s/ Benjamin L. Bailey*
    Benjamin L. Bailey (WVSB #200)
    Benjamin J. Hogan (WVSB #12997)
    *Special Assistant Attorneys General*
    Bailey & Glasser LLP
    209 Capitol Street
    Charleston, WV 25301
    (304) 345-6555 (telephone)
    (304) 342-1110 (facsimile)

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**ANDREW STEWART;**
**ASHLEY STEWART;**
**DINNER'S READY, INC.,**
**a West Virginia corporation, d/b/a**
**BRIDGE CAFE & BISTRO,**

                      Plaintiffs.

v.                                      Civil Action No. 3:20-cv-00611

**JAMES C. JUSTICE, II, in his official**
**capacity as Governor of West Virginia;**
**RICK SNAMAN, an individual,**

                      Defendants.

## CERTIFICATE OF SERVICE

      I, undersigned counsel, do hereby certify that the foregoing **Defendant Governor Justice's Reply in Support of Motion to Dismiss** was served upon counsel of record this 28th day of December 2020, through the CM/ECF System, which will notify the following CM/ECF participants:

| | |
|---|---|
| John H. Bryan | Adam K. Strider |
| JOHN H. BRYAN, ATTORNEYS AT LAW | Jennifer E. Tully |
| 411 Main Street | BAILEY & WYANT |
| P.O. Box 366 | P.O. Box 3710 |
| Union, WV 24983 | Charleston, WV 25337 |
| jhb@johnbryanlaw.com | astrider@baileywyant.com |
| *Counsel for Plaintiffs* | jtully@baileywyant.com |
| | *Counsel for Rick Snaman* |

                                                                */s/ Benjamin L. Bailey*
                                                               Benjamin L. Bailey (WVSB #200)