IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

ANDREW STEWART,
ASHLEY STEWART,
DINNER'S READY, INC.,
a West Virginia corporation, d/b/a
Bridge Cafe & Bistro,

                Plaintiffs,

v.                                             CIVIL ACTION NO. 3:20-0611

JAMES C. JUSTICE, II,
in his official capacity as Governor of West Virginia,
RICK SNAMAN, an individual,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Rick Snaman's "Motion to Dismiss with Prejudice" (ECF No. 13) and Governor James Justice's "Motion to Dismiss for Failure to State a Claim" (ECF No. 38). The motions are ripe for review. For the following reasons, the motions are **GRANTED**, and the case is **DISMISSED WITH PREJUDICE.**

                **I.    BACKGROUND**

On January 21, 2020, the Center for Disease Control confirmed the first case of the novel coronavirus in the United States. By March, the virus spread to West Virginia, leading Governor Justice to declare a State of Emergency and issue a "Stay at Home Order" via Executive Order 9-20. The order required all West Virginians to shelter in place unless performing an "essential activity," and all "non-essential" operations to temporarily cease. After Governor Justice lifted the Stay at Home Order, he issued the so-called "Mask Mandate" via Executive Order 50-20. This required "individuals to use face coverings (masks, bandannas, face shields, etc.) when in

confined, indoor spaces, other than when in one's residence or while actively engaged in the consumption of food and/or beverage, and when not able to adequately social distance from other individuals who do not reside in the same household."

Andrew and Ashley Stewart are two of the many restaurant owners affected by the Orders. They closed their restaurant after Governor Justice issued the Stay at Home Order and reopened after the Governor lifted those restrictions. Upon reopening, Plaintiffs announced on Facebook that they would not be complying with the Mask Mandate, stating: "some of our staff have chosen to forego wearing a face covering. Reasons for their decisions are their own, but we can assure you that in no way do they have malicious intent for their community. We will also not turn guests away should they choose not to wear a mask themselves." (the "Facebook Post") Compl. ¶ 10, ECF No. 1. The Facebook Post quickly circulated around the community, generating thousands of comments and over 500 shares.

According to the Complaint, Defendant Rick Snaman, a Registered Sanitarian for the Putnam County Health Department, saw the Facebook Post and informed Plaintiffs that he would inspect the restaurant a few days later. Compl. ¶ 13. Plaintiffs allege that Snaman "informed them that as a result of the expressions and speech contained in their Facebook post, that they would be shut-down [sic] by the Putnam County Department of Health if they failed to comply with the Governor's mask mandate, pursuant to Executive Order No. 50-20." *Id*.

The Complaint further alleges that Snaman told local news outlets that the health department would close Plaintiffs' restaurant if they continued to ignore the Mask Mandate. Snaman is also alleged to have contacted the West Virginia Alcohol Beverage Control Administration seeking to revoke Plaintiffs' permit. On Friday July 10, 2020, Snaman arrived at Plaintiffs' restaurant and performed an onsite inspection. After this visit, Plaintiffs allege that they

complied with the Mask Mandate but only "under the continued threat of closure." Compl. ¶ 11. On July 14, 2020, Snaman conducted a follow-up inspection to confirm that the restaurant remained compliant.

Plaintiffs initiated this suit on September 15, 2020, asserting three causes of action. Count One alleges that Snaman violated Plaintiffs' First Amendment rights by "threaten[ing] adverse regulatory action against their restaurant, by revoking their operation permits and/or closing them down, as well as subjecting them to immediate inspection and adverse comments in the media." Compl. ¶ 26. Plaintiffs voluntarily dismissed Count Two. ECF No. 31. Under Count Three, Plaintiffs ask the Court to bar enforcement of Executive Orders 9-20 and 50-20 and to declare them unconstitutional under the First Amendment and the Due Process Clause.[1]

On November 16, 2020, Plaintiffs filed an "Emergency Motion for a Preliminary Injunction or Temporary Restraining Order" (ECF No. 23). They asked the Court enjoin enforcement of Executive Order 77-20, which superseded Executive Order 50-20 and imposed stricter face covering requirements. After a hearing in which all parties appeared, the Court found that Plaintiffs were unlikely to succeed on the merits and denied the motion. Order, ECF No. 36. Now Defendants ask the Court to dismiss the Complaint for failure to state a claim upon which relief may be granted.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss complaints that fail to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible

---

[1] Plaintiffs also asserted claims under the Equal Protection Clause and West Virginia Constitution but seem to abandon those claims. *See* Pls' Resp. to Def.'s Mot., ECF No. 41. As such, the Court dismisses these claims for the reasons stated in the November 24, 2020 order (ECF No. 36).

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though the line between "plausible" and "implausible" is not always clear, it is well established that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Courts are likewise not required to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009). A court may grant a motion to dismiss "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III. DISCUSSION

For obvious reasons, courts are not routinely asked to consider the constitutionality of public health restrictions designed to control the spread of a novel virus. But the past year has not been routine. As the novel coronavirus and its variants spread across the United States, public officials have issued numerous orders to protect the public and numerous lawsuits have followed. Despite having the opportunity to do so, neither the Fourth Circuit nor the Supreme Court have articulated a clear legal standard for these cases. Still, one case has emerged as controlling among other courts: *Jacobson v. Commonwealth of Massachusetts* 197 U.S. 11 (1905).

The plaintiffs in *Jacobson* challenged a board of health regulation requiring all adults to get a smallpox vaccination. *Id*. at 12-13. In reviewing the law, the Supreme Court counseled against overriding the legislature's power to decide the best way to protect public safety. *Id*. at 30.

*Jacobson* teaches that "[o]ur Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (citing *Jacobson*, 197 U.S. at 38) (internal quotations omitted). Accordingly, the standard of review is deferential.

Although *Jacobson* is more than a century old, recent case law shows that it is still good law. Several circuit courts have applied the *Jacobson* framework to COVID-19 related challenges. *See, e.g.*, *Big Tyme Investments, L.L.C. v. Edwards*, No. 20-30526, 2021 WL 118628, at *8 (5th Cir. Jan. 13, 2021); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 127 (6th Cir. 2020); *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020); *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1179-80 (11th Cir. 2020). One circuit court even held that the "failure to apply the *Jacobson* framework produced a patently erroneous result." *In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020).

Several district courts within the Fourth Circuit have followed suit. Judge Bailey in the Northern District of West Virginia denied a request for a preliminary injunction challenging Governor Justice's executive orders, finding that "the starting point must be *Jacobson* . . . ." *AJE Enter. LLC v. Justice*, No. 1:20-CV-229, Doc. 28 at 3 (N.D. W. Va. Oct. 27, 2020). Judge Blake in the District Court of Maryland came to the same conclusion in another COVID-19 related case when denying a preliminary injunction and granting a motion to dismiss. *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 228 (D. Md. 2020), *appeal dismissed sub nom.*, No. 20-1579, 2020 WL 6787532 (4th Cir. July 6, 2020); *Antietam Battlefield KOA v. Hogan*, No. CV CCB-20-1130, 2020 WL 6777590, at *2 (D. Md. Nov. 18, 2020). And Judge Gibney in the Eastern District of Virginia reached this conclusion in *Tigges v. Northam*, No. 3:20-CV-410, 2020 WL 4197610, at

*7 (E.D. Va. July 21, 2020).

Plaintiffs argue that "the Supreme Court has recently clarified and minimized" *Jacobson's* applicability. They first cite to Justice Alito's dissent in *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) and his November 12, 2020 speech to the Federalist Society. These sources are neither authoritative nor persuasive. Plaintiffs also point to the Supreme Court's per curiam opinion *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 69 (Nov. 25, 2020), which stayed a facially non-neutral restriction imposed on religious houses of worship. *Id*. at 63. However, the order neither clarified nor minimized *Jacobson*; it did not cite it at all.

This may be explained by the justices' apparent disagreement over the scope of *Jacobson*. Justice Gorsuch's concurrence discussed the decision at length and criticized Justice Roberts' concurrence in *South Bay*, calling it "mistaken from the start" because it cited to *Jacobson. Id.* at 70; *cf. id*. at 73, (Kavanaugh, J., concurring) (citing Justice Roberts' *South Bay* concurrence approvingly). Chief Justice Roberts responded:

> But while *Jacobson* occupies three pages of [Gorsuch's] concurrence, it warranted exactly one sentence in *South Bay*. What did that one sentence say? Only that "[o]ur Constitution principally entrusts [t]he safety and the health of the people to the politically accountable officials of the States to guard and protect." It is not clear which part of this lone quotation today's concurrence finds so discomfiting.

*Id*. at 76 (Roberts, C.J., dissenting) (internal citations omitted).

Though it is clear that *Jacobson's* ultimate fate is unsettled, the Court declines to read the tea leaves of *Roman Catholic Diocese* and will follow the rule adopted by a majority of courts.[2]

---

[2] Several other district courts reached this conclusion after discussing *Roman Catholic Diocese*. *See, e.g.*, *M. Rae, Inc. v. Wolf*, No. 1:20-CV-2366, 2020 WL 7642596, at *6 (M.D. Pa. Dec. 23, 2020) ("The bottom line for our purposes is that *Jacobson* is controlling precedent until the Supreme Court or Third Circuit Court of Appeals tell us otherwise."); *Delaney v. Baker*, No. CV 20-11154-WGY, 2021 WL 42340, at *11-12 (D. Mass. Jan. 6, 2021) ("until the Supreme Court overrules *Jacobson*, this Court is bound by stare decisis to apply *Jacobson* harmoniously with the precedent developed under the tiers of scrutiny."); *Heights Apartments, LLC v. Walz*, No. 20-CV-

As such, the Court will apply the *Jacobson* framework to determine: (1) whether the Stay at Home Order and Mask Mandate have "no real or substantial relation" to protecting public health, or (2) whether the Orders are "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *See Jacobson*, 197 U.S. at 31.

(1) Real and Substantial Relation to Public Health

On March 17, 2020, West Virginia confirmed its first reported case of COVID-19. Since then, the novel virus has infected over 121,935 West Virginians and killed at least 2,031.[3] Nationwide, over 26 million cases have been reported (up from 12 million since this Court's November 24, 2020 Order) and nearly 440,000 Americans have died (up from 246,000).[4] These numbers are likely to continue rising until the vaccine is widely available. In short, "[t]his public health emergency is unprecedented in the past century. . . . " Crouch Aff. 1 at ¶ 8, ECF No. 29-1.

In developing West Virginia's response to the pandemic, the Governor consulted with public health professionals who have "reviewed countless scholarly articles, news reports, and studies from around the world since the pandemic began." Crouch Aff. 1 at ¶ 8, ECF No. 29-1. The Government has determined that the disease spreads through "droplets, aerosols, talking, yelling, screaming, coughing, sneezing, and just breathing, and it spreads more the longer persons spend in contact with each other." Marsh Aff. 1 at ¶ 6, ECF No. 29-1. "The evidence for the efficacy of wearing masks in preventing the spread of COVID-19 is indisputable and is in accordance with CDC guidelines." Marsh Aff. 2 at ¶ 6, ECF No. 29-1.

---

2051 (NEB/BRT), 2020 WL 7828818, at *10 (D. Minn. Dec. 31, 2020) ("So, in sum, the Court will apply *Jacobson*, but it does so bearing in mind the many arguments against doing so.").
[3] COVID-19 Daily Update (Feb. 2, 2021), https://dhhr.wv.gov/News/2021/Pages/COVID-19-Daily-Update-2-2-2021.aspx.
[4] Centers for Disease Control and Prevention, CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Feb. 2, 2021).

After Plaintiffs filed the Complaint, the Governor issued Executive Order 77-20 (the basis for Plaintiffs' motion for a preliminary injunction) and imposed stricter mask requirements. Among other things, Executive Order 77-20 requires all individuals age 9 and over to wear an adequate face covering when indoors, regardless of one's ability to social distance from other individuals. It also requires businesses to notify and enforce the masking requirements among patrons. The Governor issued Executive Order 77-20 based on "national and international standards in combating the disease, [state officials'] greater understanding of how to prevent its spread, updated public health guidance, and the knowledge that [the state] has gained since the beginning of March 2020." Crouch Aff. 2 at ¶ 13, ECF No. 29-1.

Likewise, the Stay at Home Order and its amendments were issued "based on the best information and guidance available to [the state] from [] in-state experts, from [its] observation of other states, from national and international experts, and all the studies and resources [it] consulted." Crouch Aff. 1 at ¶ 21, ECF No. 29-1. The evidence shows that "physical distancing [is] critical in reducing spread, as is washing or sanitizing hands and surfaces." Marsh Aff. 2 at ¶ 7, ECF No. 29-1. It is also clear that "[i]ncreased person-to-person interaction during an accelerating phase of community COVID-19 spread is more likely to lead to outbreaks, and new infections across the state." *Id*. Based on this information, the Governor acted rationally in limiting social outings and gatherings. Altogether, this evidence indicates that the Governor's measures are informed, grounded in science, and substantially related to protecting the public from the virus.

Plaintiffs urge this Court to find that the Governor's Executive Orders fail the *Jacobson* substantial relation inquiry because they have "not been enacted pursuant to legislative enactment" and violate the West Virginia Constitution. Pls.' Resp. To Def.'s Mot. 10, ECF No. 41. However, courts have repeatedly applied *Jacobson* to executive orders regarding public health. *See, e.g.*,

*Antietam Battlefield KOA v. Hogan*, No. CV CCB-20-1130, 2020 WL 6777590, at *3 (D. Md. Nov. 18, 2020). Plaintiffs also fail to identify a legal basis for which to incorporate state law into the *Jacobson* standard. *Cf. 910 E Main LLC v. Edwards*, No. 6:20-CV-00965, 2020 WL 4929256, at *12 (W.D. La. Aug. 21, 2020) ("Whether a state executive's actions are authorized under state law has no relevance to the inquiry under *Jacobson* and *Abbott*."), *aff'd sub nom. Big Tyme Investments, L.L.C. v. Edwards*, No. 20-30526, 2021 WL 118628 (5th Cir. Jan. 13, 2021).

Although the Court understands that the Stay at Home Order and Mask Mandate have burdened many in the community, the Orders are neither arbitrary nor unreasonable. The Governor consulted with public health officials, relied on data provided by credible sources, and collaborated with other public agencies to protect the public from a virus that has already killed thousands of West Virginians. Therefore, the Court finds that there is a rational basis for the Orders and that they bear a real and substantial relation to this public health crisis.

(2) Invasion of Constitutional Rights

The next prong of the *Jacobson* analysis is whether the challenged actions are "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31. Though this standard typically warrants scrutiny akin to rational basis review, Plaintiffs argue that this standard is too deferential and was disapproved by *Roman Catholic Diocese*. Plaintiffs rely on Justice Gorsuch's concurrence, which admonishes: "we may not shelter in place when the Constitution is under attack. Things never go well when we do." *Roman Catholic Diocese*, 141 S. Ct. at 73 (Gorsuch, J., concurring). But Plaintiffs can rest assured. This Court has not sheltered in place; it simply finds no invasion of fundamental constitutional rights here, even under Plaintiffs' preferred standard. Accordingly, the Court will apply the traditional constitutional standards of scrutiny below.

9

A. First Amendment

Plaintiffs argued in their Emergency Motion that the Mask Mandate violates the First Amendment because refusing to wear a face mask is political speech. ECF No. 24. The Court rejected this claim, holding that the act of refusing to wear a face covering does not carry a meaning that is "overwhelmingly apparent" such that it is protected speech. Order 9, ECF No. 36 (citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006)). The Court further held that, even if refusing to wear a mask is protected speech, the Mask Mandate withstands intermediate scrutiny as a content-neutral time, place, and manner restriction: being required to wear a mask in conformity with the Governor's Order may be an inconvenience or annoyance, but it is a trivial imposition on an individual's freedom outweighed by the reasonableness of such precautions during a pandemic. *Id.* at 10-12 (citing *Ross v. Early*, 746 F.3d 546, 552 (4th Cir. 2014)).

Plaintiffs have not raised any argument that compels a different result. Plaintiffs first argue that the Complaint illustrates that the refusal to wear a mask is sufficiently expressive conduct. The Complaint alleges:

> The act and the choice of wearing a mask over one's face versus not wearing a mask, like it or not, has become political speech. Those who choose to express their beliefs against the wearing of a face mask, including political and public expressions supporting nonconformity with unconstitutional and un-American laws, which have not undergone the legislative process, are not free to engage in such speech.

Compl. ¶ 46. These allegations are conclusory and unpersuasive. As this Court previously held, the act of failing to wear a mask is not sufficiently expressive because there are several non-political reasons why one may not be wearing a mask at any given moment.

Second, Plaintiffs argue that the Mask Mandate fails the four-element test under *United States v. O'Brian*, 391 U.S. 367 (1968). There, the Court held that a government regulation is

10

sufficiently justified (1) if it is within the constitutional power of the Government; (2) if it furthers an important or substantial governmental interest; (3) if the governmental interest is unrelated to the suppression of free speech; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id*. at 378. The Mask Mandate passes this test: (1) it is a justifiable exercise of the state's police power under the United States Constitution; (2) it furthers a compelling interest by slowing the spread of the coronavirus and saving lives; (3) that interest is unrelated to the alleged restrictions on Plaintiffs' speech; and (4) it imposes no greater restriction than is required because it is limited by age, activity, and place. Therefore, the Court reaffirms its findings that Plaintiffs have failed to sufficiently plead a First Amendment violation.

      B. Retaliation

Plaintiffs' First Amendment retaliation claim fails for similar reasons. According to the Complaint, Snaman retaliated against Plaintiffs for their Facebook Post by enforcing the Mask Mandate, among other things. Snaman argues that this claim should be dismissed because (1) Plaintiffs failed to allege a viable First Amendment retaliation claim, and (2) he is entitled to qualified immunity.

At the outset, this Court is skeptical of Plaintiffs' claim as a matter of law. In *Nieves v. Bartlett*, the Supreme Court held that a plaintiff's First Amendment retaliatory arrest claim fails as a matter of law if the Government can show that there was probable cause to arrest the plaintiff. 139 S. Ct. 1715, 1721-28 (2019). A few circuit courts have extended this rule to claims of government retaliation through civil or regulatory action. *See, e.g.*, *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1303 (11th Cir. 2019) (dismissing claim that defendant retaliated against plaintiff by initiating a civil RICO action against her because the action was supported by probable

cause), *cert. denied sub nom*. *DeMartini v. Gulf Stream, FL*, No. 19-1436, 2020 WL 6385773 (U.S. Nov. 2, 2020); *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1056 (9th Cir. 2019) (finding *Nieves* instructive in suit alleging that a social worker retaliated against the plaintiff, a father, by coercing his child's mother to file an ex parte custody application).

Here, Plaintiffs publicly admitted that they were defying the Mask Mandate and placing their community in danger. That gave Snaman sufficient cause to contact Plaintiffs, inform them of the consequences of violating the order, give them a deadline to bring the restaurant into compliance, and to perform an onsite inspection. It seems to this Court that the inquiry should stop there. However, because the Fourth Circuit has not yet extended *Nieves* beyond retaliatory arrest and prosecution claims, the Court will analyze Plaintiffs' claim under the typical First Amendment retaliation standard below.

The Fourth Circuit has established a three-element test for First Amendment retaliation. Under this test, the plaintiff must demonstrate (1) "that his or her speech was protected"; (2) "that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and (3) "that a causal relationship exists between its speech and the defendant's retaliatory action." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000) (internal citations omitted). Plaintiffs' claims fail under the first prong to the extent that they are based on their refusal to wear a mask. To the extent that Plaintiffs' claims arise from the Facebook Post, those claims fail under the third prong.

Under the third prong, Plaintiffs "must establish a 'causal connection' between the defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the

12

plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260).

It is clear from the Complaint that Snaman's alleged retaliatory animus was not a but-for cause of his actions. As Plaintiffs state in their Complaint, the Governor sought to enforce the Mask Mandate to avoid reissuing the Stay at Home Order. This shows that Snaman would have taken the same action had he learned about Plaintiffs' noncompliance through another source. Indeed, Plaintiffs allege that Snaman threatened that the restaurant "would be shut[] down by the Putnam County Department of Health *if they failed to comply with the Governor's mask mandate*." Compl. ¶ 13 (emphasis added). This indicates that his actions were not motivated by animus, but by an obligation to enforce the law and promote public safety. There is nothing suspicious about that. In contrast, it would have been suspicious if Snaman conditioned the results of the inspection on Plaintiffs' promise to delete the Facebook Post or if he made the inspection unnecessarily difficult. Plaintiffs allege no such thing. Thus, although it is undeniable that the Facebook Post played some role in Snaman's inspection, the Court cannot conclude that Plaintiffs have established causation.

Plaintiffs insist that dismissal is precluded by their allegation that Snaman's sole motivating factor was the Facebook Post. However, courts need not accept allegations that are not plausible. Plausibility does not exist where there is an "obvious alternative explanation" for alleged misconduct. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). As noted above, the obvious explanation is that Plaintiffs publicly admitted their noncompliance of an order Snaman was tasked with enforcing. *See* W. Va. Code § 16-2-11(a)(10) (requiring local health boards to enforce public health laws).

If the Court were to ignore this explanation and accept Plaintiffs' allegation, the result

would be untenable. As Snaman writes in his Reply, under Plaintiffs' reasoning, a cook could tweet that food-borne pathogens are a hoax, exclaim that he will not refrigerate his meats, then sue the official who inspects his restaurant for retaliation. Likewise, a marijuana legalization advocate could post on Facebook that the Controlled Substances Act is unconstitutional, proclaim that she is expressing her opposition by smoking a joint at the park, then sue the officer who approaches her for retaliation. Even more ridiculous would be the libertarian who accuses the IRS of retaliation for auditing her after she declared "taxes are theft!" on her tax return and nothing more. The allegations here are similarly nonsensical. Thus, the Court cannot accept Plaintiff's allegation that Snaman's sole motivation was to retaliate against Plaintiffs for voicing their opposition to the Mask Mandate.

Finally, Plaintiffs' retaliation claim fails because Snaman is entitled to qualified immunity. The primary question in a qualified immunity analysis is whether the allegations show that the official's conduct violated a clearly established constitutional right of which reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As held above, Snaman's alleged enforcement of the Mask Mandate did not violate Plaintiffs' constitutional rights. But even if it did, such rights were not clearly established. *See id*. at 201. Plaintiffs identify no authority establishing that refusing to wear a mask is a constitutional right. Nor can they produce a precedent rendering Snaman's reliance on the executive order unreasonable. Consequently, Snaman is entitled to qualified immunity, and the retaliation claim against him is dismissed.

    C. Due Process

Plaintiffs next argue that the Governor's Orders violate the Due Process Clause of the Fourteenth Amendment. The Court previously held that Plaintiffs were not entitled to a preliminary injunction on either procedural or substantive due process grounds because Plaintiffs

failed to identify a cognizable property interest of which they have been deprived. Now the Court must dismiss the claim for the same reason.

To succeed on a due process claim, whether procedural or substantive, a plaintiff must demonstrate that he or she possessed "a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Plaintiffs' property interest claim fails because the Supreme Court and Fourth Circuit have expressly held that the "general right to do business" is not a constitutionally protected right. *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *In re Premier Auto. Serv., Inc.*, 492 F.3d 274, 283 (4th Cir. 2007). Courts have reaffirmed this rule in other COVID-related cases. *See, e.g.*, *Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 541 (E.D. N.C. 2020).

Plaintiffs ignore this longstanding rule and attempt to fashion their own. They argue that the Stay at Home Order deprived them of "assets" and "goodwill" without due process. Pls.' Resp. 14, ECF No. 41. However, they do not allege that the Governor deprived them of assets distinct from the general right to do business. Plaintiffs merely state that the Stay at Home Order deprived "the victim restaurants of that portion of its corporate property which is the most vital asset it owns, and that asset which is expected and which is required to pay its employees, owners, and debts. That asset is the basic right to continue lawful operation . . . . " *Id*. How is the "basic right to continue lawful operation" different from the "general right to do business"? Plaintiffs do not say.

Ironically, Plaintiffs accuse the Governor of relying on "semantics, rather than law" while citing nothing more than Black's Law Dictionary and cases that undermine their own argument. For instance, Plaintiffs cite to the Third Circuit's decision in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 131 F.3d 353 (3d Cir. 1997). But the Supreme Court reviewed that decision and held that "*the activity of doing business,* or *the activity of making*

15

*a profit* is not property . . . . " *Coll. Sav. Bank*, 527 U.S. at 675 (emphasis in original).

Plaintiffs also cite to several cases that have no bearing on the issues here. In *United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969), the Second Circuit held that the right to pursue lawful business is a fundamental right under *Louis K. Liggett Co. v. Baldridge*, 278 U.S. 105 (1928). However, the Supreme Court dedicated an entire opinion to overruling *Liggett*, calling it a "a derelict in the stream of the law." *N.D. State Bd. of Pharm. v. Snyder's Drug Stores, Inc.*, 414 U.S. 156 (1973). Plaintiffs also cite to *Small v. United States*, 333 F.2d 702 (3d Cir. 1964), which stated: "The right to pursue a lawful business or occupation is a right of property which the law protects against intentional and unjustifiable interference." *Id*. at 704. The problem, however, is that Small did not assert a due process claim—he sued the Government for tortious interference under the Federal Tort Claims Act. *Id*. Without legal support more authoritative than this irrelevant case law and Black's Law Dictionary, or allegations of asset seizure, the Court cannot allow Plaintiffs' claims to proceed.

Finally, Plaintiffs argue that the Governor violated their due process rights by enacting executive orders that violate the West Virginia Constitution. Again, Plaintiffs ignore the existing legal framework and attempt to disguise their state law claims as federal to circumvent West Virginia's sovereign immunity. Plaintiffs provide no authority establishing a cause of action for violations of state law under the Due Process Clause, nor do they identify authority that permits a federal court to hear such a claim without running afoul of the Eleventh Amendment. The Court declines to adopt such arguments and rejects this claim.

### IV. CONCLUSION

For the foregoing reasons, the motions to dismiss (ECF Nos. 13, 38) are **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to send a copy of this opinion to counsel of record and any unrepresented parties.

ENTERED:  February 9, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE